1
2
3
4

# UNITED STATES DISTRICT COURT

5

## DISTRICT OF NEVADA

6
7
8
9
10
11
12

| | | |
|---|---|---|
| DORIS HUDNALL, MICHAEL GUTHRIE, and ANGELA GUTHRIE, as representatives and beneficiaries of Hamp Williams's Estate, | ) ) ) ) | 2:06-cv-0490-RCJ-LRL |
| Plaintiffs, | ) ) | **ORDER** |
| v. | ) ) | |
| PANOLA COUNTY, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

13
14
15
16
17
18
19
20
21
22
23
24
25

This matter comes before the Court on Defendant Vinson & Elkins's ("V&E")

Motion to Dismiss (#20), Defendant Texas General Land Office's ("Texas GLO") Motion to

Dismiss (#23), Defendant Commercial National Bank's Motion to Dismiss (#27), Defendants

EOG Resources, Inc. ("EOG"); EOG Resources-Carthage, Inc. ("Carthage"); and ERSO

Inc.'s ("ERSO") Consolidated Motion to Dismiss (#29), Defendant ExxonMobil's

Consolidated Motion to Dismiss (#38), Defendant JP Morgan Bank's Motion to Dismiss

(#40), Defendant Allison Family's Motion to Dismiss (#64), Defendants Alfred G. Glassell

Jr., Glassell Producing Co., and Glassell Family Trust's (collectively "Glassell Defendants")

Motion to Dismiss (#65), Defendant Panola County's Motion to Dismiss (#66), Defendant

First State Bank & Trust's Motion to Dismiss (#103), and Defendant International Paper

Company's Motion to Dismiss (#110).  Also pending before this Court are Plaintiffs'

Motions to Extend Time.  (#50-#55.)  It is hereby ordered that Defendants' above-mentioned

1    Motions to Dismiss are *granted* and Plaintiffs' Motions to Extend Time are *denied*.

2                                    **BACKGROUND**

3           On June 12, 2006, Plaintiffs Doris Hudnall, a citizen and resident of Clark County,

4    Nevada, Michael Guthrie, a citizen and resident of Cook County, Illinois, and Angela

5    Guthrie, a citizen and resident of Clark County, Nevada (collectively "Plaintiffs") filed their

6    Complaint (#4) with this Court, alleging that Plaintiffs (as representatives of Hamp

7    Williams's Estate) are rightful owners to 10,000 acres of land located in Carthage, Texas.

8    According to Plaintiffs, they "are heirs of the Estate of Hamp Williams," who died on April

9    6, 1930.  (#4 at 5-6.)  Plaintiffs claim that Hamp Williams ("Williams") applied for, and

10   received, a land grant from the Texas GLO for which he was eligible due to his service in the

11   United States Colored Heavy Artillery Unit of the Civil War.  (*Id.* at 5.)  Plaintiffs argue that

12   shortly after receiving his land from the Texas GLO, Williams discovered oil, natural gas,

13   and timber on his property.  Plaintiffs further allege that numerous individuals and entities

14   thereafter "robbed his land of its natural resources."  (*Id.* at 6.)  According to Plaintiffs,

15   several entities illegally acquired Williams's lands by forcing him to vacate his property after

16   threatening his life and killing his son.  In order to secure his land and other assets for his

17   family, Williams established a trust and placed the 10,000 acres under guardianship for his

18   children and grandchildren.

19          Plaintiffs now argue that the above-mentioned Defendants have continued the

20   conspiracy to deprive Williams and his heirs of their rightful claim to the Carthage land.[1]

21   _____

22          [1] The case pending before this Court is not Plaintiffs first attempt to recover damages based on the alleged
     fraudulent transfer of title to Williams's property.  On December 30, 2002, Plaintiffs filed an adversary proceeding,
23   *Michael Guthrie, et al. v. Enron Corp.*, No. 02-8132A, in the United States Bankruptcy Court for the Southern
     District of New York.  Plaintiffs allege in their Complaint that they are secured creditors with respect to the property
24   made the basis of this lawsuit in Enron Corp.'s ("Enron") bankruptcy proceeding pending in the Southern District of

25                                    Page 2 of  16

1   Specifically, Plaintiffs allege eight causes of action: (1) Fraud and Deceit; (2) Conspiracy to

2   Commit and Aid a Fraud; (3) Negligent Misrepresentation; (4) Unjust Enrichment; (5)

3   Constructive Trust; (6) Conversion; (7) Punitive Damages; and (8) Declaratory Relief. (*Id.*,

4   8-14.) Each Defendant in this action has filed a motion to dismiss asking the Court to

5   dismiss this case based on several legal theories. Although not every Defendant has moved

6   the Court to dismiss on the same grounds, Defendants ask this Court to dismiss Plaintiffs'

7   claims based on the following: (1) lack of personal jurisdiction; (2) improper venue; (3)

8   failure to state a claim upon which relief may be granted; and (4) sovereign immunity.

9                              **DISCUSSION**

10  **I.    Personal Jurisdiction**

11      Nine Defendants[2] seek dismissal on personal jurisdiction grounds. These Defendants

12  contend that the Court lacks personal jurisdiction over them and bring Motions to Dismiss

13  under Federal Rule of Civil Procedure 12(b)(2). These Defendants successfully demonstrate

14  that their activities, both in general and in association with the underlying allegations, are far

15

16

17  _____

18  New York. (#4.) Plaintiffs further allege that the bankruptcy court gave them preferred status on July 3, 2002, as
    evidenced by minutes of proceedings held on June 13, 2002. (*See id.*) Once granted that status, Plaintiffs filed
19  proofs of claims against Enron's bankruptcy estate, seeking to recover in excess of $100 billion allegedly owed to
    them as a result of Enron and its affiliates' unlawful acquisition of the property at issue in this case. (#29-7.)
20  Plaintiffs filed the Adversary Proceeding while those claims were pending. In 2003, the Court granted Enron's
    objections to the proofs of claims, disallowing and expunging them in their entirety. (#29-8.) The causes of action
21  raised in the Adversary Proceeding are nearly identical to those pled in this lawsuit: fraud, misrepresentation, unjust
    enrichment, constructive trust, and conversion. (#29-2.) After considering allegations involving the same facts,
    causes of action, and even some of the same parties named in the present Complaint, the bankruptcy court dismissed
22  Plaintiffs' adversary proceeding in its entirety on March 13, 2003. (#29-3.)

23      [2] The following Defendants move to dismiss based on personal jurisdiction: V&E (#20); Commercial
    National Bank (#27); EOG, Carthage, and ERSO (Consolidated #29); Allison Family (#64); Glassell Defendants
24  (#65); Panola County (#66); and First State Bank & Trust (#103).

25                              Page 3 of  16

enough removed from the State of Nevada so as to strip this Court of personal jurisdiction in the matter.

### A.      Standard of Review

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Although the plaintiff cannot simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotations omitted).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantive justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Because Nevada's long arm jurisdictional statute "is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01; *see also* Nev. Rev. Stat. Ann. § 14.065 (LexisNexis 2006).

### B.      General Jurisdiction

A court may exercise personal jurisdiction over a defendant either through general or specific jurisdiction.  General jurisdiction is appropriate when a defendant engages in continuous and systematic contacts that "approximate physical presence in the forum state," even if the underlying cause of action is unrelated to those general activities. *Schwarzenegger*, 374 F.3d at 801; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  In this case, the Defendants all principally reside and conduct business

in Texas or other nearby regions in the Southeast, and have had scarce, if any, contacts with the state of Nevada.

Defendant V&E is a Texas-based law firm.  None of its partners are licensed in Nevada.  V&E is not licensed to do business in Nevada, does not regularly conduct business in Nevada, has no real or personal property in Nevada, and maintains no records in Nevada. While V&E has sporadically represented clients in Nevada, these representations have not been continuous or systematic.

Commercial National Bank is not incorporated in Nevada, has no places of business in Nevada, and does not have ATMs or banking services offered or marketed to Nevada residents.  The bank is only located in the Southeast, with branch locations in Louisiana, Alabama, Florida, Mississippi, Georgia, and Tennessee.  Thus, Commercial National Bank does not have sufficient ties with Nevada to justify a finding of general jurisdiction. Similarly, Defendant First Bank & Trust has one branch located in Carthage, Texas.  First Bank & Trust does not have a place of business in Nevada, and it does not offer services in this forum.

Carthage, ERSO, and EOG also have limited connections with Nevada.  None of these Defendants reside in Nevada.  Carthage and ERSO have never done business in the state and have no history of contacts with Nevada.  EOG, on the other hand, has been involved in some business activities in Nevada, but these activities occurred after Plaintiffs' claims arose.  Since 2003, EOG has undertaken mineral lease activity in Nevada, engaging in commerce with Nevada residents.  However, the events that give rise to Plaintiffs' suit against EOG occurred several years prior to 2003.  The Ninth Circuit has held that for

purposes of determining minimum contacts, due process requires that the defendant have fair warning that they might be brought to court in that state based on their activities at the time of the events leading to the suit, rather than at the time the suit was filed. *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). Therefore, EOG's business activities in Nevada after 2003 do not constitute the requisite minimum contacts to establish general jurisdiction in this case. Furthermore, the level of contacts with a forum state necessary to establish general jurisdiction is "quite high." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990). EOG has no offices, facilities, bank accounts, or regular expenses attributable to their presence in Nevada. As such, this Court does not have general jurisdiction over EOG.

The Allison family, comprising various family beneficiaries of a trust held by George Thomas Allison Jr. and Conrad Allison, also has scant ties to the forum. No Allison family member has ever owned property or resided in Nevada. One family member has been to Nevada on business once while defending a client in Las Vegas courts, but this representation was wholly disconnected from the present dispute. The family has only visited the state on limited occasions for vacations and leisure activities. Similarly, the Glassell Defendants lack substantial contacts with Nevada. The Glassell family members and their Foundation and Producing Company do not reside in Nevada, are not licensed to do business in Nevada, do not own any real or personal property in Nevada, and do not maintain any records in Nevada. Therefore, the Allison Family and Glassell Defendants do not have sufficient contacts with the forum to support general jurisdiction.

Finally, Panola County is a political subdivision of Texas. It has no offices in Nevada, is not authorized to do business in Nevada, has no employees in Nevada, owns no

property in Nevada, and has never carried on any business in Nevada. Given this total lack of nexus between Panola and Nevada, general jurisdiction is inappropriate.

Given the clear lack of "substantial, continuous, and systematic" contacts between the moving Defendants and the forum of Nevada, this Court lacks general jurisdiction over Defendants V&E, Commercial National Bank, First State Bank & Trust, Carthage, EOG, ERSO, the Allison Family, the Glassell Defendants, and Panola County.

**C.    Specific Jurisdiction**

If a court lacks general jurisdiction over a defendant, it can still hear the case if specific jurisdiction is applicable. The Ninth Circuit utilizes a three-prong test to analyze specific jurisdiction: (1) whether the defendant purposefully availed itself of the "privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) whether the claim "arises out of or relates to defendant's forum-related activities"; and (3) whether the exercise of jurisdiction comports "with fair play and substantive justice, i.e., it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. Applying this test to the specific Defendants, it becomes clear that this Court also lacks specific jurisdiction over these parties.

**1.    Purposeful Availment**

The Defendants seeking dismissal for lack of personal jurisdiction have not purposefully availed themselves of the benefits of conducting business in Nevada or sought protection under Nevada law. Plaintiffs' principal allegation as to V&E is that the firm drafted a trust in Texas, almost sixty years ago. Plaintiffs do not allege that those events have any nexus with Nevada. V&E was not representing a Nevada party in drafting the purported trust. Defendants Commercial National Bank and First State Bank & Trust  have no principal

places of business in the state and does not offer any banking services to Nevada residents. Plaintiffs' allegations do not contend that the Bank performed any activities in Nevada. Similarly, the Allison Family and Glassell Defendants reside, conduct business, and own property in Texas.  While these families have had incidental contacts with Nevada in the form of isolated business ventures and vacations, these activities do not amount to purposeful availment.  Finally, Panola County has clearly not interjected itself into the forum as it is a political subdivision wholly operating in Texas.

Defendant EOG is the one Defendant that has conducted meaningful business activities in the forum.  Since 2003, EOG has engaged in some mineral lease activity in Nevada.  However, as previously noted, these activities began after the events forming the basis for Plaintiffs' allegations occurred.  "Only contacts occurring prior to the event causing litigation may be considered."  *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).  EOG's contacts with the state are also not substantial and are completely unrelated to the alleged harmful acts that took place in Texas.  Therefore, EOG's minimal business contacts with Nevada do not amount to purposeful availment in this matter.

## 2.        Claim Must Arise Out of Defendants' Forum Related Activities

Second, as already discussed, Plaintiffs have failed to tie their allegations in any way to activities by the Defendants in Nevada.  The underlying events in the Complaint all relate to a contested piece of land, and purported fraudulently cancelled trust, in Texas.  V&E's creation of the trust, the alleged misrepresentations by the Defendant banks and the County, and the actions by the Glassell Defendants and Allison family all occurred, if they occurred at

all, in Texas.  There is no connection between the allegations and the desired forum.

Plaintiffs have not stated a valid ground for personal jurisdiction over the moving defendants.

### 3.   Fair Play and Substantive Justice

Finally, jurisdiction over the Defendants in Nevada would not comport with fair play

and substantive justice.  There are no allegations linking any of these parties with Nevada,

and they would not have reasonably anticipated being brought before a Nevada court for their

actions in the present matter.  Therefore, this Court does not have specific jurisdiction over

the Defendants discussed above.

None of the moving Defendants have the requisite contacts with the forum of Nevada

to establish either general or specific personal jurisdiction in this action.  The Defendants are

all out-of-state entities and individuals who have rarely visited the forum, and then only for

personal, unrelated affairs.  Furthermore, Plaintiffs' claims all arise out of activities that

occurred in Texas, rather than Nevada.

## II.   Sovereign Immunity

Two Defendants, the Texas GLO and Panola County, seek immunity to these

proceedings under the Eleventh Amendment.  The Eleventh Amendment bars suits against a

state or its agencies, regardless of the kind of relief sought, absent consent by the state or

abrogation of immunity by congressional action.  *Pennhurst v. Halderman*, 465 U.S. 89, 100

(1984).  The Texas GLO and Panola County are both state entities entitled to immunity

protection.  The Texas GLO is an arm of the state of Texas with statewide jurisdiction.

Panola County is a political subdivision of Texas.  Previous courts have held that both types

of entities are entitled to sovereign immunity protection.  *See, e.g., John G. and Marie Stella*

*Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 670-73 (5th Cir. 1994) (barring § 1983 action

against the Commissioner of the Texas GLO because of Eleventh Amendment immunity);

*Montgomery County Hosp. Dist. v. Smith*, 181 S.W.3d 844, 851 (Tex. Ct. App. 2005)

("Governmental immunity . . . protects political subdivisions of the State, including counties,

cities, and school districts").  There has been no waiver of immunity by the state or

congressional abrogation of the state's immunity in this case.  Therefore, The Texas GLO and

Panola County are entitled to sovereign immunity under the Eleventh Amendment, and the

case should be dismissed as to them.

## III.   Venue

All but three Defendants[3] ask the Court to dismiss Plaintiffs' Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(3) for improper venue.  Because Plaintiffs' sole basis

for federal subject matter jurisdiction in this case is diversity of citizenship, the applicable

venue statute is 28 U.S.C. § 1391(a).  Section 1391(a) provides that venue in a suit in which

the plaintiff bases jurisdiction upon diversity of citizenship is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the
> same State, (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of property that is
> the subject of the action is situated, or (3) a judicial district in which any defendant
> is subject to personal jurisdiction at the time the action is commenced, if there is no
> district in which the action may otherwise be brought.

---

[3] The Following Defendants seek dismissal based on improper venue: Commercial National Bank (#27); Defendants EOG, Carthage, and ERSO (#29); ExxonMobil (#38); JP Morgan Chase Bank N.A. (#40); Allison Family (#64); Glassell Defendants (#65); Panola County (#66); First State Bank & Trust (#103); and International Paper (#110).

28 U.S.C. § 1391(a); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841-42 (9th Cir. 1986). Based on the applicable venue statute, Defendants argue that the District of Nevada is not a proper venue for this case.

### A.    Venue Under § 1391(a)(1)

As noted above, section 1391(a)(1) provides that venue is proper in a judicial district where any defendant resides, if *all* defendants reside in the same state. § 1391(a)(1) (emphasis added). In this case, all Defendants do not reside in the same state. Based on Plaintiffs' pleadings, Plaintiffs acknowledge that some Defendants reside in Texas while others reside in California and Louisiana. Plaintiffs further state that some Defendants reside "globally" or "nationally." Plaintiffs fail to allege or demonstrate that any Defendant resides in Nevada and that all Defendants reside in the same state. Accordingly, the Court cannot maintain venue under section 1391(a)(1).

### B.    Venue Under § 1391(a)(2)

Venue is proper under section 1391(a)(2) in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." § 1391(a)(2). In assessing whether events or omissions giving rise to the claim are substantial for the purpose of establishing venue under section 1391(a)(2), the Court must look at the dispute's nature. *See, e.g., Flamingo Indus., Ltd. v. United States*, No. C 00-2484 MMC, 2004 U.S. Dist. LEXIS 17530, at *3 (N.D. Cal. Aug. 23, 2004) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3rd Cir. 1994)). Events or omissions that might only have some tangential

Page 11 of  16

1

2

connection with the dispute are not sufficient to serve as a basis for maintaining venue under section 1391(a)(2).  *Id.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Plaintiffs' Complaint indicates that the actions giving rise to their claims all occurred in Texas.  Specifically, Plaintiffs allege that Williams owned or lived on approximately 10,000 acres in Carthage, Texas.  According to Plaintiffs, Williams placed the title to this land in trust for his heirs in Texas before his death.  Plaintiffs also allege that the Glassell Defendants, who are Texas residents, "suppressed and erased" certain trust accounts and in their place fabricated other entries in an attempt to rob Williams's heirs of their title to the Carthage property.  Plaintiffs further argue that the property became subject to the Glassell Family Trust, an entity alleged to be doing business in Harris County, Texas.  Finally, Plaintiffs contend that all Defendants are liable for damages caused by actions committed in Texas to the Texas property and the resources derived from that property.  Plaintiffs' only argument that venue in Nevada is proper is that the Defendants should have known that Williams's heirs could be located anywhere in the United States, including Nevada. However, Plaintiffs' location is irrelevant to the venue analysis.  Thus, because the events giving rise to Plaintiffs' lawsuit occurred solely in Texas, the Court finds that venue in the District of Nevada is improper.  *See, e.g., Engel v. CBS, Inc.*, 886 F. Supp. 728, 732 (C.D. Cal. 1995) (stating that when events giving rise to a cause of action occur solely within another judicial district, maintaining venue is improper).

21

22

**C.     Venue Under § 1391(a)(3)**

23

24

The remaining venue provision under section 1391(a) indicates that venue is proper in a district in "which any defendant is subject to personal jurisdiction at the

25

time the action is commenced, *if* there is no district in which the action may otherwise be brought." § 1391(a)(3) (emphasis added).  As discussed above, Plaintiffs have alleged sufficient facts to conclude that venue and personal jurisdiction could be established in Texas.  Therefore, venue could be maintained in a federal district court in Texas, which negates section 1391(a)(3)'s applicability because section 1391(a)(3) only applies "if there is no district in which the action may otherwise be brought."  *Id.* Accordingly, the Court grants all Defendants' requests to dismiss pursuant to Rule 12(b)(3) because venue in the District Court of Nevada is improper.

Pursuant to the above analysis, the Court dismisses this action based on lack of personal jurisdiction, improper venue, and sovereign immunity.  Because this Court lacks jurisdiction over the defendants and venue is improper, the Court does not address the merits or rule on the various motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IV.    Plaintiffs' Motion to Extend Time**

Plaintiffs have filed a motion asking the Court to extend time and delay its ruling on the motions to dismiss currently pending in this matter.  Specifically, Plaintiffs state that they need more time to "properly answer and continue to serve all (16) Defendants in Complaint." (#52.)  In addition, Plaintiffs state they are currently seeking counsel in this action.  (*Id.*)  The Court denies Plaintiffs' Motion to Extend Time.  Federal Rule of Civil Procedure 6(b) states in part the following:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order

the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

Fed. R. Civ. P. 6(b).

Plaintiffs have not provided any evidence that good cause exists as to why the Court should extend time. Plaintiffs failed to file a responsive pleading in conformity with Local Rule 7. Not only did Plaintiffs file their response late, they have failed to indicate any reason as to why they failed to comply with the Court's deadlines. Because Plaintiffs have made this motion after the specified time in which to respond has expired, they must show excusable neglect. Fed. R. Civ. P. 6(b). A request for more time to properly answer and serve defendants, without more, is not sufficient to constitute excusable neglect. *See, e.g., McGinnis v. Shalala*, 2 F.3d 548, 550-51 (5th Cir. 1993). In addition, ignorance of the law is not excusable neglect. *See Townsel v. County of Contra Costa*, 820 F.2d 319, 320 (9th Cir. 1987). Furthermore, because the Court must dismiss these claims as analyzed above, a request for more time would also be futile. Because Plaintiffs have failed to establish a legitimate reason to extend time, the Court denies Plaintiffs' Motions to Extend Time. (#50-#55.)

## CONCLUSION

The Court grants each Defendants' Motion to Dismiss in this case. The events underlying Plaintiffs' allegations all took place near the Texas-Louisiana border. At the time Plaintiffs filed their Complaint, each of the moving Defendants resided and practiced business exclusively in the Texas-Louisiana area. As such, this Court does not have personal

jurisdiction over the Defendants and this District is the improper venue.  In addition, the

Court denies Plaintiffs' Motions to Extend Time. (#50-#55.)

Accordingly, IT IS HEREBY ORDERED that the following motions are *granted*:

Defendant V&E's Motion to Dismiss (#20) because this Court lacks personal

jurisdiction over the Defendant.

Defendant Texas GLO's unopposed Motion to Dismiss (#23) because it is immune

from suit under the Eleventh Amendment.

Defendant Commercial National Bank's Motion to Dismiss (#27) because the Court

lacks personal jurisdiction and venue is improper.

Defendants EOG, Carthage, and ERSO's Consolidated Motion to Dismiss (#29)

because the Court lacks personal jurisdiction and venue is improper.

Defendant ExxonMobil's Motion to Dismiss (#38) because of improper venue.

Defendant JP Morgan Chase Bank N.A.'s Motion to Dismiss (#40) because of

improper venue.

Defendant Allison Family's Motion to Dismiss (#64) because the Court lacks

personal jurisdiction and venue is improper.

Defendant Glassell Family's unopposed Motion to Dismiss (#65) because the Court

lacks personal jurisdiction and venue is improper.

Defendant Panola County's unopposed Motion to Dismiss (#66) because of sovereign

immunity, lack of personal jurisdiction, and improper venue.

Defendant First State Bank & Trust's Motion to Dismiss (#103) because the Court

lacks personal jurisdiction and venue is improper.

1         Defendant International Paper's Motion to Dismiss (#110) because of improper

2 venue.

3         IT IS FURTHER ORDERED that Plaintiffs' Motions to Extend Time (##50-55) are

4 *denied*.

5         DATED: January 5, 2007.

6

7

8                   _____
                  ROBERT C. JONES

9                   UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                   Page 16 of  16